UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| CHARLES TAYLOR, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | 5:21-cv-142-JMH |
| v. ) | |
| ) | **MEMORANDUM** |
| UNITED STATES OF AMERICA, ) | **OPINION AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*

This matter comes before the Court on the United States' Motion to Dismiss, Alternatively, Motion for Summary Judgment [DE 5] pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, respectively. For the following reasons, the Court will grant the United States' Motion to Dismiss [DE 5] pursuant to Rule 12(b)(6) because Plaintiff Charles Taylor's claim is untimely.

## I. DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be attacked for failure "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A motion to dismiss is properly granted if it is beyond doubt that no set

of facts would entitle the petitioner to relief on his claims." *Computer Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 333 (6th Cir. 2006). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

In the present case, Taylor brings this action under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402, 2401(b), 2402, 2671-2680, alleging that an employee of the United States, specifically, a surgeon at the Lexington Veterans Affairs Medical Center ("VA"), performed a prostatectomy on him without his informed consent that resulted in irreparable harm. [DE 1]. While Taylor attempts to characterize his claim as one of lack of informed consent regarding his permanent sexual dysfunction resulting from the surgery and not the surgery itself, *see* [DE 1; DE 10], Taylor's administrative claim was clearly presented as a claim involving lack of consent for the removal of his prostate. Specifically, Taylor alleged in his administrative claim that "[t]here was NEVER any discussion about removing my prostate or

2

the consequences of removing my prostate!" [DE 5-1, at 6]. He further alleged that he "was never consulted about having [his] prostate removed] and had he known the extent of the harm, he would not have consented to the surgery." *Id.* at 7.

The distinct nature of Taylor's allegation is important because the FTCA requires that claimants bring their claim to the appropriate federal agency within two years after the claim accrues. *See* 28 U.S.C. § 2401(b). In cases brought under the FTCA, "a claim accrues when a plaintiff possesses enough information with respect to h[is] injury that, 'had [he] sought out independent legal and [expert] advice at that point, [he] should have been able to determine in the two-year period whether to file an administrative claim.'" *Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009).

Here, Taylor originally submitted his administrative claim on July 29, 2019, and his surgery was performed on September 29, 2016. *See* [DE 5-1]. In response to the United States' Motion [DE 5], Taylor argues, "The surgery itself, however, is not the basis of [Taylor's] claim—instead, [Taylor's] claim is that he was not reasonably informed prior to consenting the surgery that he would likely suffer severe and permanent sexual dysfunction." [DE 10, at 3]. Taylor supports his argument by citing his administrative claim, which states that after the surgery he "'was unaware what the surgery had done to [him].'" *Id.* quoting [DE 5-1, at 6].

3

While there is no doubt that Taylor originally claimed he was not properly informed about the consequences of his surgery, there is equal certainty that the administrative claim alleged he did not consent to the removal of his prostate. Accordingly, Taylor's allegation that he was unaware that the removal of his prostate had caused him permanent sexual dysfunction until an October 2018 meeting with another doctor at the VA is inconsequential to the determination of the timeliness of his claim because the clock began to run on the date of his surgery in September 2016, as the alleged harm was not only the consequences of the surgery, but also that the removal of his prostate took place without his consent. Therefore, Taylor's July 29, 2019, administrative claim was well past the two-year deadline.

In the alternative to his date of accrual argument, Taylor argues that the "continuous course of treatment doctrine" apples and that his claim is timely because he "continued to treat at the local VA for urologic care of his prostate condition through at least October 2018 (in fact, he continues to treat at the VA to this day)." [DE 10, at 4]. To support this argument, Taylor cites to only one federal case: *Cole v. Growse*, No. 07-CV-61-KSF, 2008 WL 696355, at *4 (E.D. Ky. Mar. 12, 2008).

In *Cole*, the Court found, "The Sixth Circuit has not explicitly recognized the availability of such a doctrine under the FTCA, but several other circuit courts of appeals have applied

4

a continuing violations doctrine to accrual of a cause of action under the FTCA . . . ." *Id*. (citations omitted). However, the Court further found the following:

> [T]he doctrine is designed to avoid the unfair application of the limitations doctrine where, because the patient was under the ongoing care of an allegedly-negligent physician, he or she may not have had reason to question the appropriateness or effectiveness of treatment received from the physician in whom the patient has placed their trust or to seek alternative medical or legal advice. *Dundon v. United States,* 559 F. Supp. 469, 473 (E.D.N.Y.1983). Accordingly, courts consistently refuse to apply the doctrine where the patient has received care from a number of physicians or hospitals. *Schunk,* 783 F. Supp. at 82 (refusing to apply doctrine where patient received care from numerous Veterans Administration physicians and hospitals); *Lazarini v. United States,* 898 F. Supp. 40 (D. Puerto Rico 1995) (course of medical treatment by separate individuals at Veterans Administration hospitals over forty years did not constitute "continuing tort" to toll accrual of limitations period), *aff'd,* 89 F.3d 823 (1st Cir.1996); *Ciccarone v. United States,* 350 F. Supp. 554, 562–63 (E.D.Pa.1972) (same), *aff'd,* 486 F.2d 253 (3rd Cir.1973). Because the treatment received by Cole in 2003 and 2004 was received from different BOP physicians at federal prisons located in different jurisdictions, the "continuous treatment" doctrine did not act to toll the accrual of his claims.

*Id*. (citation omitted).

In addition to *Cole*, the United States directs the Court's attention to the only Sixth Circuit case the United States could find addressing the continuous treatment doctrine that does not include the application of state law, *Riffle v. U.S. Veterans Admin.*, which assumed the continuous treatment doctrine applied in an FTCA case but did not find that it delayed accrual under the

5

facts presented because the plaintiff only received "intermittent" or "sporadic" treatment, as opposed to continuous treatment. No. 88-3448, 1989 WL 16146, at *1, 869 F.2d 1492 (Table) (6th Cir. Feb. 13, 1989). As support for its findings about the continuous treatment, the *Riffle* Court cited *Wehrman v. United States*, 830 F.2d 1480 (8th Cir. 1987), which found, "Under the continuing treatment doctrine, a plaintiff's cause of action does not accrue until the tortious continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time." 830 F.2d at 1483.

Here, the alleged negligent treatment did not continue. Instead, Taylor claims his doctor at the VA did not receive his informed consent before removing his prostate, so the alleged negligent treatment ended at the conclusion of Taylor's procedure. There is no indication that Taylor was subjected to further alleged negligent treatment following the procedure. Therefore, even if the Court were to assume the continuous treatment doctrine applies in this case, the doctrine would not toll Taylor's two-year deadline because the alleged negligent treatment was not of a continuous nature. Having considered the matter fully, and being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

6

(1) The United States' Motion to Dismiss [DE 5] pursuant to Rule 12(b)(6) is **GRANTED** because Plaintiff Charles Taylor's claim is untimely;

(2) This matter is **DISMISSED WITH PREJUDICE**;

(3) This action is **STRICKEN** from the Court's active docket; and

(4) Judgment **SHALL** be entered contemporaneously with this Memorandum Opinion and Order.

This 11th day of January, 2022.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge